JOHN KOONTZ, For Himself and Others Similarly Situated, Appellant, v. STATE OF NEVADA, Respondent.

No. 7614

December 20, 1974                    529 P.2d 211

*Harvey Dickerson,* of Reno, for Appellant.

*Robert List,* Attorney General, *William E. Isaeff,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

NRS 284.350(4) recites: "No elected state officer shall be paid for accumulated annual leave upon termination of his service."

John Koontz, former Secretary of State, upon first determining to resign from office after many years of highly respectable service to the State of Nevada in that position, followed the established practice of accepting the equivalent of 30 days pay instead of leaving the office 30 days before his effective retirement date. Return of the sum was demanded by the comptroller who referred to NRS 284.350(4). In response, Koontz seeks to have that portion of Chapter 106 of the 1960 Statutes of Nevada declared unconstitutional.

Under the statute all employees of the State's Public Service are entitled to annual leave with pay which may be accumulated from year to year not to exceed 30 working days. NRS 284.350(1). The Act applies to those in classified or unclassified service alike.

The legislative prohibition against elected officials participating in annual leave pay was enacted in 1960 and Mr. Koontz contends that the separate treatment of elected officers as against other state employees is an arbitrary discrimination against such elected officers in violation of the 14th Amendment.

The trial court upheld the constitutionality of the statute with which we agree.

An elected official is not accountable to anyone for his time during his term of office except to the electorate at the end of his term and if he seeks re-election. Neither his hours nor days of labor are prescribed by any rule or law. He can come and go as he pleases. His time on the job is subject to his own convenience and discretion. State employees, on the other hand, are directly answerable to their department head for their time and their work efforts and subject to their direction, supervision and control, but for the elected official it is within his capability to decide when to work and when not to work, when to take leave and for how long.

Whether Mr. Koontz departed his labors 30 days before the resignation date was within his discretion and he did not do so. Having failed to provide for a vacation during his term Mr. Koontz cannot now claim the money instead.

Under the criteria of what constitutes unreasonable and arbitrary classification the burden of convincing this court that this is an unreasonable classification has not been met. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79 (1911); Morey v. Doud, 354 U.S. 457 (1957). A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 426 (1961). They do exist in this instance.

Affirmed.

MOWBRAY AND BATJER, JJ., concur.

GUNDERSON, J., with whom THOMPSON, C. J., agrees, concurring:

We agree that, however construed, NRS 284.350(4) would not be unconstitutional. Thus, we agree that the district court correctly held against appellant Koontz in this action for declaratory relief, attacking the statute on constitutional grounds. However, we think it worthwhile to note the judgment being affirmed only determined that appellant Koontz should "take nothing by reason of this action, and further that the petition for declaratory judgment be denied."

In the court below, the State did not file any counterclaim against Mr. Koontz and, hence, he could raise no defenses in avoidance. Thus, in the procedural context of this case, we do not and could not impose any judgment on Mr. Koontz. If such a judgment is to be imposed, that can be done only in an action the State may commence to recover the money paid to Mr. Koontz, in which he will have an opportunity to raise all available legal defenses.

Without anticipating what the ruling on such defenses should be, we note the State does not now, and never has, questioned that John Koontz had an accrued right to time off and compensation for it. If Koontz's letter of resignation had specified a resignation date 30 days in the future, the State acknowledges that he could nonetheless lawfully have left work immediately, and still lawfully have been paid. Although Koontz's letter was, instead, couched in terms of an earlier effective date, it requested full payment for his accumulated leave, and the State's representatives apparently allowed Koontz to leave

office and paid him for accrued overtime, without raising the slightest question concerning the form of his resignation letter. Only after it was too late for Koontz to correct the letter's ostensible imperfections did the State's representatives claim the letter's form forfeited his acknowledged right to time off with pay.

If the State hereafter commences an action against Mr. Koontz for the money paid to him under these circumstances, it appears to us that such facts may well provide him with an affirmative defense. Without prejudging whether the State of Nevada is subject to legal defenses available against other employers, we note our view that we would never permit a private corporation belatedly to invoke such an alleged technical oversight in a resignation letter against a loyal employee who was retiring by reason of illness—not even a corporate officer at the top management level.

Moreover, although the question has not yet been briefed and argued, we also note that there is a serious question whether NRS 284.350(4) applies to officials in the executive branch of government who tender their resignations in mid-term. Certainly, if the courts ultimately so construe it, the legislature should consider amending the statute to permit officials in the executive branch to proceed as Koontz did, when resigning in mid-term for such considerations as ill health. Otherwise, to receive what admittedly is due him, such an official must remain in office as an incumbent on leave, rather than resigning and permitting the Governor to appoint a successor who is physically capable of assuming active command of his high and important state office.

Since the matters discussed above are not in issue in this case, we trust the court's decision today will not be construed as anticipating them.